UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| DESHIA R. FUGATE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 2:13-CV-00094-SPM |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Deshia R. Fugate ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 6). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I. PROCEDURAL BACKGROUND

On December 13, 2007, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since December 13, 2004 due to epileptic seizures, back problems, restless leg syndrome, carpal tunnel syndrome, depression, migraines, and glaucoma. (Tr. 42-43, 274-80, 281-88). Her application was initially denied. (Tr. 114-18). On February 13, 2008, Plaintiff filed

1

a Request for Hearing by an ALJ (Tr. 123). After a hearing, the ALJ issued an unfavorable decision on May 19, 2010. (Tr. 92-105). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on June 17, 2010 and the Appeals Council remanded the case to another ALJ on May 26, 2011. (Tr. 109-12) On May 17, 2012, Plaintiff amended her alleged onset date to March 13, 2007. (Tr. 335). After a hearing, the second ALJ issued an unfavorable decision on June 25, 2012. (Tr. 9, 12-27). Plaintiff again filed a Request for Review of Hearing Decision with Appeals Council on July 11, 2012, with additional evidence. (Tr. 7-8). After considering the additional evidence, the Appeals Council found that it did not provide a basis for changing the ALJ's decision and declined to review the case on August 22, 2013. (Tr. 1-2). Plaintiff has exhausted all administrative remedies, and the decision of the second ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.  FACTUAL BACKGROUND[1]

At the hearing before the Administrative Law Judge (ALJ) on June 11, 2012, Plaintiff testified as follows. Plaintiff was born in 1978 and has had two years of community college education. (Tr. 41-42). She is a single parent with four children and receives disability payments for two of them. (Tr. 42, 49, 54, 57). Plaintiff last worked in November 2011, preparing food in a restaurant four hours a day for about a month. (Tr. 58). At work, she got along with people okay. (Tr. 60). She did not think she would be able to perform the job eight hours a day because her legs would not be able to take it. (Tr. 65). Between 2002 and 2009, Plaintiff also held jobs as a counter worker filling drinks at a fast food restaurant, as a private care worker taking care of an

---

[1] This is not intended to be a complete summary of the entire administrative record, but rather a brief summary of those facts most relevant to Plaintiff's appeal.

elderly uncle, as a cashier, as a CNA/dishwasher/cook at a nursing home, and as an assembler at a factory. (Tr. 471-76).

Plaintiff testified that she has trouble doing ordinary day-to-day activities such as cooking, laundry, and taking out the trash because of her carpal tunnel syndrome. (Tr. 43-44). She can lift up to 20 or 25 pounds. (Tr. 45). Plaintiff drives, but she has trouble driving (especially at night) because of her glaucoma. (Tr. 46, 57). Her vision is blurry and varies from day to day. (Tr. 46, 49). She has migraines two to three times a week. (Tr. 48). She has depression that affects her ability to do things with her kids. (Tr. 49). Her restless leg syndrome keeps her up at night. (Tr. 50). Plaintiff's mother helps her with transporting her kids, doing grocery shopping, running errands, and paying bills. (Tr. 51-52, 56-57).

Plaintiff has an extensive record of medical treatment for various mental and physical problems, including major depressive disorder, anxiety, bipolar disorder, migraine headaches, restless leg syndrome, pain and numbness in her extremities, carpal tunnel syndrome, back pain, seizures, sleeping problems, vision problems, hypertension, an ankle fracture, respiratory illnesses, and dental issues. Records of particular importance to this appeal include records from January 2005 through July 2007 showing that she received treatment for depression and anxiety from Dr. Favazza, Dr. Reddy, and others at University Hospital (Tr. 548-76); records from November 2006 through May 2008 showing that she received services at Burrell Behavioral Health for her anxiety, depression, family issues, and financial issues (Tr. 603-23, 654-61); records from October 2008 through December 2009 showing that Plaintiff received treatment for anxiety and panic attacks from Kristin Parkinson, M.D., and others at Burrell Behavioral Health (Tr. 879-98); records from February 2009 through October 2009 showing that Plaintiff received treatment for anxiety, depression, panic disorder, fluid retention, dental problems, and pain from

Dr. Forest Conley, D.O., (Tr. 695-707); records from May 2007 through February 2012 showing that Plaintiff received treatment for numbness, seizures, carpal tunnel syndrome, migraine headaches, anxiety, stress, panic attacks, and sleep issues from neurologist Iqbal Khan, M.D. (Tr. 709-22, 748, 919-20, 999, 1126-30); records from June 2010 through August 2012 showing that Plaintiff received treatment for depression, anxiety, and stress from psychiatrist Ahmed Taranissi, M.D. (Tr. 983-84, 1162-63, 1188-91);[2] and records from September 2010 through April 2012 showing that Plaintiff received treatment for seizure disorder, low back pain, glucose intolerance, dental problems, osteomyelitis, acute bronchitis, chronic laryngitis, restless leg syndrome, insomnia, acute sinusitis, depression, and anxiety from her primary care physician, Denise Freidel, D.O. (Tr. 1132-61).

The record before the ALJ contained two opinions from Plaintiff's treating sources: (1) a December 30, 2009 Mental Source Statement from Dr. Parkinson indicating that Plaintiff had some moderate cognitive and social limitations (Tr. 726-27), and (2) a May 2012 letter from Dr. Freidel stating that Plaintiff "fights migraines 1-3 times per week and has to be in bed 2 hours to help them subside," that "her severe anxiety limits her interaction with people," and that she "can not hold a job due to her medical issues." (Tr. 1164).

The record before the ALJ also contained three opinions from nonexamining state agency consultants: (1) a February 2008 mental RFC assessment from Glenn D. Frisch, M.D., reflecting some moderate cognitive and social limitations (Tr. 624-37); an October 2010 mental RFC assessment and psychiatric review technique form from Mark Altomari, Ph.D., reflecting some moderate cognitive and social mental limitations (Tr. 1093-1114); and an October 2010 physical RFC assessment from Janie Vale, M.D., indicating that Plaintiff could lift 20 pounds

---

[2] Some of Dr. Taranissi's records were dated after the ALJ's decision and were submitted to the Appeals Council. (Tr. 1188-90).

occasionally and 10 pounds frequently, could stand and/or walk for about six hours in an eight-hour workday, could sit for a total of six hours in an eight-hour workday, had unlimited pushing and pulling ability, had some postural and environmental limitations, and had no manipulative or visual limitations (Tr. 1108-1114).

After the ALJ's decision, two additional opinions were submitted to the Appeals Council: (1) a June 2012 letter from treating physician Dr. Freidel stating that Plaintiff "would miss more than 14 days of work per year due to her physical and mental disabilities" (Tr. 1167), and (2) a July 2012 mental capacity assessment from treating psychiatrist Dr. Taranissi, who found that Plaintiff had numerous "marked" and "extreme" limitations in several areas of cognitive and social functioning and that those limitations had been present since March 31, 2007. (Tr. 1186-87).

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); McCoy, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv),

404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2011, and had not engaged in substantial gainful activity since March 31, 2007, the alleged onset date of disability. The ALJ found that Plaintiff had the severe impairments of bipolar disorder, seizure disorder, migraines, degenerative disc disorder, and obesity; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ found that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). Specifically, he found that Plaintiff could lift or carry 20 pounds occasionally and ten pounds frequently; could stand, sit, and/or walk for about six hours during a normal eight-hour workday; could occasionally climb ramps and stairs, could occasionally balance,

kneel, crouch, crawl; could frequently reach, handle, and finger; could never climb ladders, ropes or scaffolds; should avoid exposure to hazards, such as dangerous machinery or unprotected heights; had limited fine visual acuity, such that she was unable to read fine prints as part of her job duties; could not operate a motor vehicle or work in intense sunlight or outdoors as part of her job duties; and could understand, remember, and carry out non-detailed, two- or three-step instructions and perform repetitive tasks in a routine work environment involving infrequent changes and wherein interaction with supervisors, coworkers, and the public would be superficial in nature. (Tr. 18). Relying on the testimony of a vocational expert, the ALJ found that while Plaintiff was unable to perform past relevant work, there were jobs such as cleaner/polisher, folder, and housekeeping cleaner that exist in significant numbers in the national economy that she can perform. (Tr. 25-27). The ALJ therefore concluded that Plaintiff had not been under a disability from March 31, 2007, through the date of the decision. (Tr. 27).

## V. DISCUSSION

Plaintiff's primary argument is that the ALJ's decision should be reversed because the ALJ failed to properly evaluate and rely on the treating source opinions in the record and improperly formed his own opinion in the medical evidence. Specifically, Plaintiff argues that the ALJ gave insufficient weight to the May 2012 letter from Dr. Freidel. (Tr. 1164). She also suggests that the opinions submitted to the Appeals Council—the June 2012 letter from Dr. Freidel and the July 2012 mental capacity assessment from her treating psychiatrist, Dr. Taranissi—provide grounds for remanding the case.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C.

§§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Dr. Freidel's May 2012 Opinion

Dr. Freidel was Plaintiff's primary care physician from September 2010 through April 2012. (Tr. 1132-61). On May 22, 2012, Dr. Freidel completed a letter stating:

> [Plaintiff] has been my patient since 9/13/10. [Plaintiff] has diagnosis [sic] that include: depression, anxiety, migraine headaches, seizure disorder, hypertension, glucose intolerance, low back pain, bilateral knee pain, restless leg syndrome, insomnia, sleep apnea and she fought osteomyelitis in her right jaw over the past year. She fights migraines 1-3 times per week and has to be in bed 2 hours to help them subside. Her severe anxiety limits her interaction with people. It is my opinion that [Plaintiff] can not hold a job due to her medical issues.

(Tr. 1164). The ALJ discussed this opinion but gave it "considerably less than controlling weight." (Tr. 24).

9

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nonetheless, an ALJ may give lesser weight to a treating physician's opinion if this standard is not satisfied. Where it is not, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Social Security Ruling 96-2p, 1996 WL 374118, at *4 (July 2, 1996). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." *Id.* These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, the level of specialization of the source, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

After review of the ALJ's decision and the record as a whole, I find that the ALJ's decision to discount Dr. Freidel's opinion was supported by good reasons and substantial evidence. First, Dr. Freidel's opinion that Plaintiff "cannot hold a job due to her medical issues" concerns a question reserved to the Commissioner and is not a medical opinion that is entitled to

deference. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."); *see also* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Second, the ALJ properly found that Dr. Freidel's medical opinions were "not supported by her treatment notes." (Tr. 24). More specifically, the ALJ explained that although the specific limitations articulated in Dr. Freidel's opinion relate to Plaintiff's anxiety and migraine headaches, "Dr. Freidel did not regularly treat [Plaintiff] for a mental impairment or migraine headaches" and Plaintiff did not present with medical signs that supported Dr. Freidel's opinions. (Tr. 24). The ALJ's assessment is supported by the record. Between September 2010 and April 2012, Dr. Freidel saw Plaintiff approximately fifteen times and treated her for a variety of issues, including tooth pain, sore throat, laryngitis, cough, sinus pressure, restless leg syndrome, lower back pain, and glucose intolerance. (Tr. 1132-61). The only mention of headache in Dr. Freidel's treatment notes is a February 2011 note stating "headache bad," and there is no indication that Dr. Freidel made any diagnoses or provided any treatment for the headaches. (Tr. 1150). Her notes provide no support for her opinion that Plaintiff "fights migraines 1-3 times per week and has to be in bed 2 hours to help them subside." (Tr. 1164).

Dr. Freidel's notes do indicate that Plaintiff sometimes complained of mental symptoms, but the complaints were sporadic and appeared to be primarily related to situational stressors. In 2010, Dr. Freidel's notes contain no mentions of mental issues at all. In 2011, mental symptoms are mentioned only a few times: Dr. Freidel noted in February and June that Plaintiff was under stress (Tr. 1146, 1150), in August 2011 that Plaintiff was on an antidepressant that helped her mood a lot (Tr. 1144); and in October 2011 that Plaintiff was under "lots of stress" and had

11

"depression" (Tr. 1142-43). The first detailed description of mental symptoms was in January 2012, when Plaintiff reported that she had stopped taking her antidepressant, was more irritable, was not sleeping, had been "kicked out" of her mental health treatment services, and had lost her job. (Tr. 1138). Dr. Freidel diagnosed depression and anxiety and recommended restarting Pristiq. (Tr. 1139). At Plaintiff's next visits in February and March 2012, Plaintiff did not report mental symptoms. (Tr. 1133-37). In April 2012, Plaintiff reported being under "a lot of stress" due to her children, her mother, and her finances; being unable to focus; and having trouble sleeping. (Tr. 1131). On examination, she was tearful, depressed, and anxious, but Dr. Freidel noted that she was "doing better" after they spoke. Dr. Freidel again diagnosed depression and anxiety. (Tr. 1132).

Although the above notes suggest that Plaintiff experienced some occasional stress, depression, and anxiety, they do not support Dr. Freidel's opinion that Plaintiff "has severe anxiety [that] limits her interaction with people" that would prevent her from working at any job. The fact that Dr. Freidel's opinions contain limitations not reflected in her treatment notes supports the ALJ's decision to discount those opinions. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (holding the ALJ did not err in giving minimal weight to the report of a treating physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment . . . nor [were] they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

Third, the ALJ properly considered that Dr. Freidel's notes of mental symptoms appear to have been based primarily on Plaintiff's subjective complaints rather than on objective signs or medical findings. Indeed, as the ALJ noted, the only indication in Dr. Freidel's notes that Dr. Freidel ever observed any clinical signs of mental symptoms were in her April 2012 notes indicating that Plaintiff was tearful, anxious, and depressed. (Tr. 24, 1132). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that an ALJ was entitled to give less weight to a treating physician's opinion that "was based largely on [the claimant's] subjective complaints rather than on objective medical evidence").

Fourth, it appears from the record that Plaintiff's mental symptoms occurred primarily when Plaintiff was experiencing situational stressors and/or was not taking her prescribed antidepressants. Such symptoms are generally not considered disabling. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); *Gates v. Astrue*, 627 F.3d 1080, 1082-83 (8th Cir. 2010) (affirming the ALJ's finding that the claimant's depression was not severe where the record suggested his depression was situational, was related to marital issues, and improved with a regimen of medication and counseling).

Fifth, the ALJ properly determined that Dr. Freidel's opinions were inconsistent with other evidence in the record, including opinion evidence. The ALJ gave "significant weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Parkinson, who found Plaintiff had only "moderate" limitations in several areas: the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within

13

customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting. (Tr. 23-24, 726-27). Dr. Parkinson further found that Plaintiff had no significant limitation in the ability to understand, remember, and carry out simple instructions. (Tr. 726-27). The ALJ found this opinion consistent with Dr. Parkinson's treatment notes, which showed that Plaintiff had a depressed mood, a flat and blunted affect, and partial insight and judgment, but not more severe symptoms. (Tr. 24, 881-86, 894-98). In assessing Plaintiff's RFC, the ALJ accommodated the limitations in Dr. Parkinson's opinion by limiting Plaintiff to jobs involving "non-detailed, two- or three-step instructions" and "repetitive tasks in a routine work setting involving infrequent changes and wherein interaction with supervisors, co-workers, and the public would be superficial in nature." (Tr. 18).

Dr. Freidel's opinion was also inconsistent with the opinions of the two non-examining State agency consultants, Dr. Frisch and Dr. Altomari, each of which the ALJ gave "significant weight." (Tr. 23). Both Dr. Frisch and Dr. Altomari completed mental RFC assessments indicating that Plaintiff had, at most, moderate limitations in mental abilities needed to perform work. (Tr. 624-37, 1093-1107). As the ALJ noted, these consultants based their opinions on comprehensive reviews of the record and accompanied their opinions with detailed narratives explaining the evidence supporting their opinions. (Tr. 23).

Dr. Freidel's opinion that Plaintiff's "severe anxiety limits her interaction with people" is also inconsistent with Plaintiff's own statement that when she worked in November 2011, she got along okay with people and had no difficulty with her manager. (Tr. 60). It is also somewhat inconsistent with records discussed by the ALJ that show that although Plaintiff often had

14

abnormalities in her mood and affect, other aspects of Plaintiff's mental status examinations were normal: she was typically observed to be cooperative, not in acute distress, alert and oriented, with normal thought content, with normal speech patterns, making good eye contact, having fair judgment, having intact memory and attention, and having no suicidal or homicidal ideations. (*See, e.g.*, Tr. 19-20, 573, 576, 610, 657, 661, 663, 983, 999, 1033, 1162).

Furthermore, Dr. Freidel's opinion regarding Plaintiff's headaches is inconsistent with the treatment notes of Dr. Iqbal Khan, who treated Plaintiff for her headaches. Dr. Khan often noted that Plaintiff's headaches were controlled by Topomax. (Tr. 919-20, 999, 1129-30, Although Plaintiff did report increased headaches in late 2011 and early 2012 that she thought were related to situational stress, she reported that the Topomax still helped some and she was "still able to do her job without any significant problems." (Tr. 1126-28). These notes are inconsistent with Dr. Freidel's suggestion that Plaintiff had migraines three times a week that required her to be in bed for two hours each time.

Finally, if Dr. Freidel was suggesting that Plaintiff's physical conditions other than her headaches rendered her unable to work, her opinion is both unsupported by her treatment records and inconsistent with the other evidence in the record. Dr. Freidel's treatment notes do not indicate that *any* of Plaintiff's conditions imposed significant, long-term limitations on her. In addition, the only source in the record to specifically address the limitations imposed by Plaintiff's physical condition was Dr. Vale, who found that she could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about six hours in an eight-hour workday, could sit for a total of six hours in an eight-hour workday, had unlimited pushing and pulling ability, had some postural and environmental limitations, and had no manipulative or visual

limitations (Tr. 1108-1114). The ALJ gave significant weight to these findings and included most of them in the RFC.

For all of the above reasons, the Court finds that the ALJ's decision to give less than controlling weight to Dr. Freidel's opinions was consistent with applicable regulations and was supported by good reasons and substantial evidence. The Court further finds that the ALJ's decision regarding Plaintiff's RFC was supported by substantial evidence in the record, including the opinion of treating physician Dr. Parkinson; the opinions of the three state agency consultants; the treatment notes of neurologist Dr. Khan, Dr. Freidel, and Plaintiff's other treatment providers; and Plaintiff's own testimony regarding her abilities.

### C. Opinions Submitted to the Appeals Council

When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, the Court does not evaluate the Appeals Council's decision to deny review. Rather, the Court determines whether the record as a whole, including the new evidence, supports the ALJ's determination. *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012); *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). The Eighth Circuit has noted that this requires that the Court "must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing," which is "a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

Plaintiff suggests that two opinions prepared after the ALJ's decision and submitted to the Appeals Council require remand here: (1) Dr. Freidel's June 27, 2012 letter, and (2) Dr. Taranissi's July 7, 2012 Mental Capacity Assessment. The Court has considered these opinions

and concludes that even when they are considered, the ALJ's decision is supported by substantial evidence in the record as a whole.

### 1. Dr. Freidel's June 27, 2012 Letter

In her June 2012 letter, Dr. Freidel opined that Plaintiff "would miss more than 14 days of work per year due to her physical and mental disabilities." (Tr. 1167). The letter contains no further explanation. The Court finds that the ALJ would have likely discounted this opinion for the same reasons that he discounted the opinions in Dr. Freidel's first letter. First, the opinion is not supported by Dr. Freidel's treatment notes, which contain no indication that Plaintiff suffered significant and ongoing symptoms from her anxiety, migraine headaches, or other conditions that would cause her to miss work frequently. Second, the opinion is inconsistent with the other substantial evidence in the record to which the ALJ gave significant weight. Dr. Parkinson and Dr. Altomari found that Plaintiff was not significantly limited in the ability to "complete a normal workday and workweek without interruption from psychologically based symptoms," and Dr. Frisch found only moderate limitations in that area. (Tr. 625, 727, 1094). Similarly, Dr. Altomari and Dr. Frisch found that Plaintiff was not significantly limited in "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and Dr. Parkinson found only moderate limitations in that area. (Tr. 624, 726, 1093). Particularly in light of the fact that Dr. Freidel's letter contains no explanation of the basis for her opinion that Plaintiff would miss work frequently, the Court finds no reason to believe that the ALJ would have credited it over the other opinions in the record that he found were well supported.

### 2. Dr. Taranissi's July 7, 2012 Mental Capacity Assessment

On July 7, 2012 (after the ALJ's decision), one of Plaintiff's treating psychiatrists, Dr.

Taranissi, completed a Mental Capacity Assessment. (Tr. 1186-87). Dr. Taranissi found Plaintiff had "extreme" limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 1187). He also found that she had "marked" limitations in the ability to carry out detailed instructions, the ability to sustain an ordinary routine without special supervision, the ability to complete a normal workweek without interruptions from psychologically based symptoms, the ability to perform at a consistent pace with a one-hour lunch break and two 15-minute rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting. He found moderate limitations in most of the other areas considered. (Tr. 1186-87). He also opined that Plaintiff would likely have four or more work absences in an average month. (Tr. 1186). The assessment states that it describes limitations existing "as of March 31, 2007." (Tr. 1186).

The Court finds that this opinion would not have changed the ALJ's decision regarding Plaintiff's RFC. First, the ALJ would likely have discounted Dr. Taranissi's opinion for generally the same reasons he discounted Dr. Freidel's opinion. Like Dr. Freidel's opinion, Dr. Taranissi's opinion is inconsistent with other substantial evidence in the record, including Plaintiff's own testimony that she got along okay with her coworkers and manager when she was working in November 2011; the opinion of treating psychiatrist Dr. Parkinson that Plaintiff had (at most) moderate mental limitations; the opinions of state agency consultants Dr. Frisch and Dr. Altomari that Plaintiff had (at most) moderate mental limitations; and the treatment notes in the record indicating that Plaintiff had largely normal mental status examinations and did not consistently complain of mental symptoms. Like Dr. Freidel's opinions, Dr. Taranissi's opinions appear to be based in large part on Plaintiff's subjective complaints rather than on objective

clinical findings. (Tr. 983, 1162, 1188-91). In addition, as with Plaintiff's complaints to Dr. Freidel, Plaintiff's complaints to Dr. Taranissi were nearly always associated with situational stressors, such as financial and family problems. (Tr. 983, 1162, 1188).

Moreover, as with Dr. Freidel's opinions, Dr. Taranissi's opinions are not supported by his own treatment notes. Plaintiff reported to Dr. Taranissi that she felt down, anxious, overwhelmed, or lacking in focus, and he observed her to have an anxious and depressed mood. However, his mental status examinations of Plaintiff were otherwise generally normal, showing that Plaintiff had good eye contact, fluent speech, fair insight and judgment, mostly logical and goal-directed thoughts, and an average intellect. (Tr. 983, 1162, 1188-90). These notes are more consistent with the moderate cognitive and social limitations in the RFC than they are with the extreme and marked limitations in Dr. Taranissi's opinion. It is also significant that although Dr. Taranissi's opinion purports to cover the period from March 2007 through the date of the ALJ's June 2012 decision, Dr. Taranissi saw Plaintiff on only two occasions during that period: once in June 2010 and once in July 2011. (Tr. 983-84, 1162). He then saw her on two occasions in 2012, after the ALJ's decision. (Tr. 1188-91). The sporadic nature of his treatment undermines the weight the ALJ would likely have given to his opinion. *See Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007).

For all of the above reasons, the Court finds that even when the new opinions submitted to the Appeals Council are considered, the ALJ's decision regarding Plaintiff's RFC is supported by substantial evidence in the record as a whole, including the opinion of treating physician Dr. Parkinson, the opinions of the three state agency consultants, the treatment notes of Dr. Khan and Plaintiff's other treatment providers, and Plaintiff's own statements about her abilities. Thus, remand is not required. *See Perks*, 687 F.3d at 1093-94 (holding that a treating physician opinion

submitted after the ALJ's decision did not require remand where the opinion was not supported by clinical or diagnostic data and where consideration of the opinion along with the evidence before the ALJ did "not lead to the conclusion that the ALJ would have reached a different result or that the ALJ's decision is unsupported by substantial evidence in the record as a whole").

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of March, 2015.